UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-81431-CIV-MATTHEWMAN

SOUTHERN-OWNERS INSURANCE COMPANY,

     Plaintiff,

v.

SERGIO MARQUEZ, *et al.*,

     Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' AMENDED VERIFIED MOTION FOR ENTITLEMENT
AND AWARD OF ATTORNEYS' FEES AND COSTS [DE 86]**

**THIS CAUSE** is before the Court upon Defendants Sergio and Jenna Marquez's Amended

Verified Motion for Entitlement and Award of Attorneys' Fees and Costs ("Motion") [DE 86].

Plaintiff Southern-Owners Insurance Company ("Southern-Owners") has filed a Response [DE

87], and Defendants Sergio and Jenna Marquez have filed a Reply [DE 88]. Thus, the matter is

now ripe for review.

## I.     **BACKGROUND**

On August 6, 2020, Christopher Murphy, a minor, by and through his parents and natural

guardians, James and Sarah Murphy, and James and Sarah Murphy in their individual capacity

(collectively, the Murphys), filed a "Complaint and Demand for Jury Trial" against VillageWalk

of Wellington Homeowners Association, Inc. ("Association") and Sergio and Jenna Marquez ("the

Marquezes"). [DE 1-1]. The Complaint and Demand for Jury Trial—filed in the Fifteenth Judicial

Circuit in and for Palm Beach County and assigned Case Number 2020-CA-008311—is

1

hereinafter referred to as the "Underlying Complaint." Similarly, Case Number 2020-CA-008311 is hereinafter referred to as the "Underlying Lawsuit" in which the Underlying Complaint was filed.

In the Underlying Complaint, the Murphys alleged three counts—negligence against the Marquezes (Count I), negligence against the Association (Count II), and a "parent's claim for injuries to their child" (Count III), presumably against both the Marquezes and the Association. [DE 1-1 at 2–4]. These claims were connected to the Marquezes' purportedly negligent entrustment of a golf cart to their fourteen-year-old daughter and her actions in allegedly "running down" seven-year-old Christopher Murphy while he was on a pedestrian walkway maintained by the Association. *Id.* Specifically, in Count I of the Underlying Complaint, the Murphys alleged that the Marquezes "negligently permitted their daughter to operate the golf cart on the [Association's] pedestrian walkway, which constituted negligence . . . in the ownership and maintenance of a portion of the [Association] premises which w[as] not reserved to [the Marquezes'] exclusive use or occupancy." *Id.* at 2 ¶ 7. In Count II, the Murphys alleged that "the Association owned, operated, and was in possession and control of the common areas of Villagewalk of Wellington, including the pedestrian walkway where the child was run down and injured," and that "[t]he Association negligently failed to reasonably maintain the premises" by, *inter alia*, "[f]ailing to prohibit the use of golf carts on . . . pedestrian walkways." *Id.* at 2 ¶¶ 10– 11. Lastly, in Count III, the Murphys alleged that, "[a]s a consequence of the injury to their child, [they] have incurred expenses of hospitalization, medical and nursing care and treatment," with said expenses being "permanent or continuing." *Id.* at 4 ¶ 14.

Subsequently, on August 28, 2020, Southern-Owners filed a Complaint for Declaratory Judgment ("Operative Complaint") [DE 1] against the Murphys and the Marquezes in this Court. Within the Operative Complaint, Southern-Owners stated it had issued a Commercial General Liability policy to the Association—policy #032382-72691586-20 ("the Policy")—and that the Marquezes had, in turn, "submitted a claim to Southern-Owners for coverage [under the Policy for] the damages alleged against them in the Underlying Lawsuit." [DE 1 at 4 ¶¶ 17–18]. Southern-Owners further stated that it was "providing a defense to the [Marquezes] under a Reservation of Rights" in the Underlying Lawsuit but was "uncertain as to whether the damages alleged against" the Marquezes were covered under the Policy issued to the Association. *Id.* at 4 ¶ 19. Accordingly, Southern-Owners sought "declaratory relief in order to determine and enforce contractual/legal rights under the . . . [P]olicy . . . and the applicable law." *Id.* at 4 ¶ 21.

The Policy under which Southern-Owners requested declaratory relief contains the following "Endorsement" language:

**ADDITIONAL INSURED**
**HOMEOWNERS ASSOCIATION MEMBERS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

A.    **SECTION II – WHO IS AN INSURED** is amended to include as an additional insured each individual member of the insured Homeowners Association, *but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that member's exclusive use or occupancy*.

[DE 1-2 at 8] (italicized emphasis added). Utilizing such language, Southern-Owners alleged that the Marquezes' "liability for the damages at issue in the Underlying Lawsuit d[id] not arise out of the ownership, maintenance, or repair of any portion of the [Association's] premises not reserved

3

for [the Marquezes'] exclusive use or occupancy." [DE 1 at 5 ¶ 25]. Instead, Southern-Owners contended that the Marquezes' "liability for the damages alleged in the Underlying Lawsuit ar[ose] out of [the Marquezes'] ownership of the golf cart which was involved in the collision with Christopher Murphy." *Id.* at 5 ¶ 24. In other words, Southern-Owners maintained that there was "no coverage for the [Marquezes] for the claims alleged in the Underlying Lawsuit," requesting that the Court enter an order stating the same. *Id.* at 5.

On August 28, 2020—the same day that Southern-Owners filed the Operative Complaint— Southern-Owners also filed a "Motion to Intervene for Limited Purpose and Motion to Stay" in the Underlying Lawsuit. [DE 61 at 3] (citing DE 15 of the Underlying Lawsuit). In the motion, "Southern-Owners argued that it had an interest in the Underlying Lawsuit and sought a stay pending this Court's determination as to whether there [was] coverage for the claims in the Underlying Lawsuit." *Id.* (alteration added) (citing DE 22 of the Underlying Lawsuit). Ultimately, the state court granted Southern-Owners' motion as to the request to intervene but denied the motion as to the request to stay. *Id.* (citing DE 22 of the Underlying Lawsuit).

Thus, while the Underlying Lawsuit continued to proceed as normal, the Marquezes filed their "Answer and Affirmative Defenses to [Southern-Owners' Operative] Complaint . . . and Counterclaim" [DE 13] in the instant case.[1] Within the Marquezes' Counterclaim, the Marquezes, too, sought declaratory relief relating to the Policy. [DE 13 at 11–14]. However, according to the Marquezes, the aforementioned "Endorsement" to the Policy provided them with coverage "for the alleged damages at issue in the Underlying Complaint," as they were the "additional insureds"

---

[1] The Murphys filed their own "Answer, Affirmative Defenses, Counterclaim and Demand for Jury Trial." [DE 5]. However, the Murphys' involvement is unimportant for purposes of the Marquezes' request for attorneys' fees and costs that is now before the Court.

contemplated by the Policy's Endorsement language. [DE 13 at 12 ¶¶ 25–26]. The Marquezes therefore requested "the entry of a declaration that the [Policy] issued by Southern-Owners to the . . . Association affords coverage to the Marquezes for the alleged damages in the Underlying Lawsuit." *Id.* at 14 ¶ 37.

Shortly thereafter, during a Status Conference, the Court *sua sponte* directed the parties to "submit jurisdictional briefing of five pages or less to discuss 1) the basis for jurisdiction and 2) abstention based on the factors set forth in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005)." [DE 35]. The parties complied, filing the requisite briefing. In short, Southern-Owners' position was that "the *Ameritas* factors, as applied here, do not favor abstention," while the Marquezes' position was that "this Court should exercise its discretionary authority pursuant to *Ameritas* . . . and abstain from exercising jurisdiction over this instant matter." [DE 37 at 6; DE 38 at 5].

With no jurisdictional ruling at that time, and, despite the Marquezes' position that the Court should abstain from exercising jurisdiction, the Marquezes sought leave to file a third-party complaint against the Association [DE 41], which the Court subsequently granted. [DE 44]. In the ensuing Third-Party Complaint [DE 45], the Marquezes again sought declaratory relief, but as to a separate matter. Specifically, the Marquezes sought "declaratory relief to determine whether the Association had a contractual obligation under the [Declaration of Covenants, Conditions and Restrictions of the Association] to procure a policy of insurance, which insurers [sic] the Marquezes for the . . . alleged damages against them in the Underlying Lawsuit." [DE 45 at 5 ¶ 22].

After having later reviewed the parties' jurisdictional briefing, the Court entered an Order Dismissing Without Prejudice and Closing Case ("Dismissal Order") [DE 61]. In the Dismissal Order, the Court first found that it "has [diversity] jurisdiction over this action," including ancillary jurisdiction over the third-party complaint. [DE 61 at 5]. The Court next turned to whether it should "exercise its discretion to provide declaratory relief in this case." *Id.* at 6. In doing so, the Court examined the nine factors set forth in *Ameritas* "that courts may use to evaluate whether to dismiss a federal declaratory action in light of an ongoing parallel state action." *Id.* After finding that the instant case and the Underlying Lawsuit were "sufficiently similar such that they are parallel," and, after consideration of the relevant *Ameritas* factors, the Court exercised its discretion and declined jurisdiction. *Id.* at 7–8. As stated by the Court:

> The relevant *Ameritas* factors—particularly those factors relating to interests of judicial economy and the state's interest—support declining jurisdiction. Here, the judgment in the federal declaratory action would not settle the controversy or serve a useful purpose in clarifying the legal relations at issue. Moreover, the underlying factual issues are important, and may bear on this Court's interpretation of the documents, and the state court is in a better position to address the factual issues. Finally, there is a close nexus between the underlying factual and legal issues and state law, as the documents at issue are governed by Florida law.

*Id.* at 8. Thus, the Court dismissed the case without prejudice. *Id.* at 9.

Southern-Owners filed a Motion for Reconsideration [DE 63]. According to Southern-Owners, the Court's Dismissal Order failed to: (1) "explain how the action w[ould] not clarify legal relations"; (2) "identify what underlying factual issues [we]re important"; and (3) "address all relevant *Ameritas* factors." [DE 63 at 3]. Moreover, Southern-Owners stated that the Court's Dismissal Order "misconstrue[d] several relevant factors that should have been given significant weight." *Id.* at 4. Consequently, Southern-Owners argued that the Court "should not abstain from

exercising jurisdiction over this action," requesting that the Court quash the Dismissal Order and re-open the case. *Id.* at 6–7.

Despite its Motion for Reconsideration still pending before the Court, Southern-Owners then appealed the Court's Dismissal Order, DE 69, resulting in the United States Court of Appeals for the Eleventh Circuit suspending the effectiveness of Southern-Owners' Notice of Appeal until "entry of an order by [this Court] disposing of" the Motion for Reconsideration. [DE 74-1]. Additionally, because Local Rule 7.3(a)(1) requires the filing of an attorneys' fees/cost motion notwithstanding the prospect or pendency of appellate proceedings, the Marquezes filed a Verified Motion for Entitlement and Award of Attorneys' Fees and Costs [DE 73] within 60 days of the Dismissal Order.

Ultimately, the Court denied Southern-Owners' Motion for Reconsideration, finding that the Dismissal Order was "thorough, complete, and well supported." [DE 79 at 4]. And, in the interests of judicial economy, the Court denied the Marquezes' Verified Motion for Entitlement and Award of Attorneys' Fees and Costs without prejudice that same day, allowing the Marquezes to "refile the motion within 30 days of the issuance of the Eleventh Circuit's mandate." [DE 80].

Thereafter, due to the Court's denial of the Motion for Reconsideration, Southern-Owners supplemented its initial appeal with an Amended Notice of Appeal [DE 81]. However, the Eleventh Circuit later dismissed Southern-Owners' appeal for failure to prosecute. [DE 83 at 1]. Thus, following the Marquezes' filing of a Motion for Clarification [DE 84] related to the proper filing deadline for their amended motion for attorneys' fees and costs in the absence of an "official" mandate,[2] the Court allowed the Marquezes until January 14, 2022 to file their amended motion

---

[2] 11th Cir. R. 41-4 provides that, when there is a non-published order dismissing an appeal, "including an order

for attorneys' fees and costs. [DE 85]. The Marquezes timely filed the instant Motion [DE 86], and Southern-Owners and the Marquezes filed their Response [DE 87] and Reply [DE 88], respectively.

## II.    DISCUSSION

In the Marquezes' Motion, the Marquezes seek entitlement to \$31,152.50 in attorneys' fees pursuant to section 627.428(1), Florida Statutes. [DE 86 at 17]. In support, the Marquezes have attached time logs [DE 86-1], and the affidavits of Michael J. Pike, Esq., Daniel Lustig, Esq., Andrew J. Boloy, Esq., and Stuart Hartstone, Esq., concerning their experience and the reasonableness of their requested fee amount. [DE 86-2]. The Marquezes also seek \$119.94 in costs. [DE 86 at 17]. To that end, the Marquezes have attached an Invoice [DE 86-3 at 1] and a United States Postal Service Certified Mail Receipt [DE 86-3 at 2] in support.

In response, Southern-Owners: (1) argues that the Marquezes are not entitled to attorneys' fees under section 627.428(1), Florida Statutes; (2) objects to "the hourly rates requested by the Marquez's [sic] counsel and support staff"; (3) contends that the Marquezes seek certain attorneys' fees that "are unrelated to the defense of the Declaratory Judgment Action and/or Order of dismissal"; (4) argues that the Marquezes seek certain attorneys' fees for specific time entries that are "excessive, duplicative, or clerical"; and (5) asserts that the Marquezes are not entitled to an award of costs. [DE 87]. This Order will address each of Southern-Owners' arguments in three sections—one concerning attorneys' fees entitlement, one concerning the reasonableness of the requested attorneys' fees amount, and one concerning costs.

---

dismissing an appeal for want of prosecution," the clerk "shall issue a copy to the district court clerk or agency [of the order] as the mandate."

## A. <u>Attorneys' Fees Entitlement</u>

### 1. <u>The Parties' Arguments</u>

i) <u>The Marquezes' Motion [DE 86]</u>

The Marquezes argue that they are entitled to attorneys' fees under section 627.428(1), Florida Statutes. [DE 86 at 4]. According to the Marquezes, because Southern-Owners has conceded that they are members of the Association, the Marquezes are therefore "additional insureds" pursuant to the Policy's "Endorsement" language. *Id.* Moreover, because the Marquezes are "additional insureds," the Marquezes contend that, pursuant to Florida law, they are either "named insureds under the Policy . . . or, they are omnibus insureds because they are covered by the [Endorsement] in the Policy, but not personally named." *Id.*

The Marquezes next argue that the purpose of section 627.428 "is to discourage the contesting of valid claims against insurance companies and to reimburse successful insureds for their attorney's fees when they are compelled to defend or sue to enforce their insurance contracts." *Id.* (quoting *Ins. Co. of N. Am. v. Lexow*, 602 So. 2d 528, 531 (Fla. 1992)). In this regard, the Marquezes assert "it is irrelevant that [they] prevailed on a procedural ground rather than on the merits," as an insured merely needs to obtain judgment or its functional equivalent in his or her favor for purposes of entitlement to attorneys' fees under section 627.428. *Id.* at 4–6. Indeed, the Marquezes note that "[t]he Eleventh Circuit has already found that the dismissal for a lack of subject matter jurisdiction may warrant attorneys [sic] fees under section 627.428." *Id.* at 5 (citing *Prime Ins. Syndicate, Inc. v. Soil Tech Distribs., Inc.*, 270 F. App'x 962, 963 (11th Cir. 2008)). The Marquezes thus urge this Court to follow the same analysis as *Endurance Assurance Corp. v. Zoghbi*, No. 18-23960-CIV, 2020 WL 8258331 (S.D. Fla. July 7, 2020), *report and*

9

*recommendation adopted*, No. 18-23960-CIV, 2021 WL 229977 (S.D. Fla. Jan. 22, 2021)—a case in which the court found attorneys' fees entitlement under section 627.428(1) based on dismissal after consideration of the factors enumerated in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005). *Id.* at 5–6.

    ii)  <u>Southern-Owners' Response [DE 87]</u>

In Southern-Owners' Response, Southern-Owners begins by arguing that the Marquezes are *not* entitled to attorneys' fees under section 627.428(1), Florida Statutes. [DE 87 at 5]. Southern-Owners thereafter argues that the Marquezes are neither named insureds nor named beneficiaries under the Policy. *Id.* at 6. Additionally, to the extent the Marquezes argue they qualify as "additional insureds" under the Policy based on their status as members of the Association— and, therefore, as omnibus insureds under Florida law—Southern-Owners argues that the Marquezes "***have not*** established that they qualify as 'additional insureds' under the [P]olicy." *Id.*

> According to Southern-Owners,
>
> an individual member of the [A]ssociation does not qualify as an Additional Insured simply because of their status as member of the Association." *Id.* at 7. Rather, the plain language provides that an individual member of the association only qualifies as an additional insured with respect to liability ***arising out of the ownership, maintenance, or repair of that portion of the premises which is not reserved for that member's exclusive use or occupancy***.

*Id.* at 7. Thus, as argued by Southern-Owners, because the Marquezes' liability "***does not arise*** out of their ownership, maintenance, or repair of a portion of the premises which is not reserved for their exclusive use or occupancy," the Marquezes "do not qualify as additional insureds for the claims alleged in the Underlying Action." *Id.* at 7–8. Further, because the Court declined to exercise jurisdiction over this case, Southern-Owners argues that "the issue of whether the [Marquezes] qualify for coverage [as additional insureds] remains unsolved," and that, "[w]ithout

a resolution of this issue the [Marquezes] cannot establish that they qualify as Additional Insureds . . . [and cannot therefore] establish that they qualify as 'omnibus insureds' under the [P]olicy." *Id.* at 8.

### iii) The Marquezes' Reply [DE 88]

In the Marquezes' Reply, the Marquezes argue that "the plain language of the Endorsement shows that members of [the] insured [Association], i.e., the Marquezes, are covered by a provision of the Policy . . . [and are thus] considered omnibus insureds under the Policy."[3] [DE 88 at 3]. With that being said, the Marquezes argue "the determination of coverage is not necessary to determine . . . entitlement [to] attorneys' fees under Florida Statute Section 627.428" because, "[i]f the dispute is within the scope of 627.428 and the insurer loses, the insurer is always obligated for attorney's fees." *Id.* at 2 (quoting *Lexow*, 602 So. 2d at 531). In support, the Marquezes note that "Florida Courts have awarded attorneys' fees to insureds in coverage dispute actions even when coverage ha[s] not been established." *Id.* at 4. (citing *Capitol Specialty Ins. Corp. v. Ortiz*, No. 17-23329-Civ, 2019 WL 383868, at *1 (S.D. Fla. Jan. 15, 2019), *report and recommendation adopted sub nom. Capitol Specialty Ins. Corp. v. Ortiz by and Through Corona*, No. 17-23329-Civ, 2019 WL 367916 (S.D. Fla. Jan. 30, 2019)).

### 2. **Relevant Law**

"[I]n diversity cases[,] a party's right to attorney's fees is determined by reference to state law." *Prime*, 270 F. App'x at 963. Section 627.428(1), Florida Statutes (2020), provides that:

> *Upon the rendition of a judgment or decree* by any of the courts of this state against an insurer and *in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer*, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall

---

[3] In the Reply, the Marquezes no longer argue that they are named insureds under the Policy.

adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

§ 627.428(1), Fla. Stat. (2020) (emphasis added). The entry of *any* dismissal order—including dismissal without prejudice—satisfies the "judgment or decree" requirement of section 627.428(1). *See Atain Specialty Ins. Co. v. Henry's Carpet & Interiors, Inc.*, 564 F. Supp. 3d 1265, 1270 (S.D. Fla. 2021); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. F. Vicino Drywall II, Inc.¸* No. 10-60273-CV, 2011 WL 13214289, at *2 (S.D. Fla. Aug. 22, 2011), *report and recommendation adopted*, No. 10-60273-cv, 2011 WL 13214290 (S.D. Fla. Sept. 13, 2011) ("Judge Gold's November 29, 2011 order dismissing National Union's lawsuit certainly qualifies as such a judgment or decree . . . ."). Moreover, as further clarified by the Florida Supreme Court, "only the named or omnibus insured, the insured's estate, specifically named beneficiaries under the policy, and other third parties who claim policy coverage through an assignment are entitled to an award of fees" under section 627.428(1). *Cont'l Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 377 (Fla. 2008); *see also MSPA Claims I, LLC v. Century Sur. Co.*, No. 16-20752-CIV, 2017 WL 998282, at *6 (S.D. Fla. Mar. 15, 2017) ("Under the language of the statute, only an insured or named beneficiary has rights."). "A named insured is one who is designated as an insured under the liability policy." *Cont'l Cas. Co.*, 974 So. 2d at 374 (internal quotation marks and citation omitted). An omnibus insured, on the other hand, "is one who is covered by a provision in the policy but not specifically named or designated." *Id.*

Assuming a party meets these necessary prerequisites, section 627.428(1) applies "both when the insured prevails in a suit brought against its insurer and when the insured prevails in a suit brought against it by its insurer." *Prime*, 270 F. App'x at 963. This is because "the purpose of

section 627.428 'is to discourage the contesting of valid claims against insurance companies and to reimburse successful insureds for their attorney's fees when they are compelled to defend or sue to enforce their insurance contracts.'" *Endurance Assurance Corp.*, 2020 WL 8258331, at \*2 (quoting *Lexow*, 602 So. 2d at 531).

However, an insured need not prevail on the merits to recover attorneys' fees under section 627.428(1). *Prime*, 270 F. App'x at 964; *Capitol Specialty Ins. Corp.*, 2019 WL 383868, at \*1 (finding that a different but substantially similar provision of the Insurance Code—section 626.9373, Florida Statutes—does not require the insured to prevail on the merits and establish coverage). "Florida courts applying [section 627.428(1)] have awarded attorney's fees even in cases where the insured party did not prevail 'on the merits.'" *Prime*, 270 F. App'x at 964. This includes cases dismissed without prejudice for lack of jurisdiction, and cases dismissed without prejudice based on the *Ameritas* factors. *See Nat'l Union Fire*, 2011 WL 13214289, at \*2 (regarding dismissal without prejudice for lack of jurisdiction); *Endurance Assurance Corp.*, 2020 WL 8258331, at \*3 (regarding dismissal for prudential reasons utilizing the *Ameritas* factors). In other words, "[i]f the dispute is within the scope of section 627.428 and the insurer loses, the insurer is always obligated for attorney's fees." *Lexow*, 602 So. 2d at 531.

In *Endurance Assurance Corp.*, defendants Elite Premium Finance, Inc. and Security Finance, Inc. ("the defendants") brought an insurance coverage action against the plaintiff insurer in state court. *Endurance Assurance Corp.*, 2020 WL 8258331, at \*1. "While the state litigation was pending, [the plaintiff insurer] filed an action [in federal court] . . . seeking a declaration that it owed no duty to indemnify [a separate defendant] in the underlying suit." *Id.* The defendants subsequently "filed a motion to dismiss the action[,] asking the Court . . . to abstain from exercising

13

jurisdiction based on the ongoing state court litigation," which the Court granted based on the *Ameritas* factors. *Id.* The plaintiff insurer appealed, and the Eleventh Circuit Court of Appeals dismissed the action without prejudice. *Id.*

In addressing the defendants' motion for attorneys' fees filed thereafter, United States Magistrate Judge Edwin G. Torres[4] noted that "the Eleventh Circuit and the Florida Supreme Court agree that the dismissal of an insurer's claim mandates a fee award regardless of merits or non-merits dismissal." *Id.* at *3 (citing *Capitol Specialty Ins. Corp.*, 2019 WL 383868, at *2 n.2 and cases cited therein). Accordingly, after "[t]aking all relevant cases and arguments into consideration," Judge Torres found that the defendants were entitled to attorneys' fees under section 627.428(1) on account of the court's dismissal of the case "based on prudential reasons (i.e. the *Ameritas* factors)," recommending that the defendants' motion for attorneys' fees be granted. *Id.* at *3–4. United States District Judge Kathleen M. Williams adopted Judge Torres' report and recommendation in its entirety, finding that the defendants "established entitlement to attorneys' fees under Fla. Stat. § 627.428." *Endurance Assurance Corp.*, 2021 WL 229977, at *1.

### 3.  **The Instant Case**

As noted earlier, Southern-Owners' position is that, under the facts of the case, the Marquezes cannot establish that the damages alleged against them in the Underlying Lawsuit arise "out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that member's exclusive use or occupancy." *See* § 627.428(1). Southern-Owners also argues that, because the Court dismissed the instant case without prejudice for prudential reasons under *Ameritas*, the Court necessarily could not have made any determination that the Marquezes were

---

[4] The Honorable Edwin G. Torres is now Chief Magistrate Judge of the Southern District of Florida.

covered under the Policy's "Endorsement" such that the Marquezes are omnibus insureds entitled to attorneys' fees under section 627.428(1).

Here, the Endorsement to the Policy at issue states as follows:

> **SECTION II – WHO IS AN INSURED** is amended to include as an additional insured each individual member of the insured Homeowners Association, *but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that member's exclusive use or occupancy.*

[DE 1-2 at 8] (italicized emphasis added). Pursuant to the plain language of the Policy's Endorsement, members of the Association are included as "additional insureds" under the Policy only under certain circumstances—when liability arises "out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that member's exclusive use or occupancy." *Id.* However, despite Southern-Owners' arguments, the salient issue for purposes of an attorneys' fee award under section 627.428(1) is not whether the Marquezes qualify as "additional insureds" under the Policy given the circumstances present in the instant case. Instead, it is whether there exist *any* circumstances *in general* that would qualify the Marquezes as "additional insureds" (or, omnibus insureds)[5] under the Policy and Florida law such that they are entitled to an award of attorneys' fees under that statutory provision.

To determine otherwise would lead to an absurd result. Requiring the Court to first determine whether the Marquezes do indeed qualify as "additional insureds" under the facts of the case prior to any award of attorneys' fees, or to preclude attorneys' fees because the case was disposed of procedurally without reaching the merits, would be contrary to well-established law

---

[5] *See U.S. Fid. & Guar. Co. v. State Farm Mut. Auto. Ins. Co.*, 369 So. 2d 410, 412 (Fla. 3d DCA 1979) (referring to omnibus insureds and additional insureds interchangeably), *Davis v. Travelers Ins. Co.*, 295 F.2d 205, 205 (5th Cir. 1961) (same).

allowing for attorneys' fees and costs under section 627.428(1) even after non-merits dismissal. *See Prime*, 270 F. App'x at 964; *Capitol Specialty Ins. Corp.*, 2019 WL 383868, at *1; *Endurance Assurance Corp.*, 2020 WL 8258331, at *3–4. Simply stated, if the Court were to adopt Southern-Owners' position, the Court could *never* find entitlement to fees under section 627.428(1) absent adjudication of the case on the merits. This result would be at direct odds with the Florida Supreme Court's stated purpose for section 627.428—"to discourage the contesting of valid claims against insurance companies and to reimburse successful insureds for their attorney's fees when they are compelled to defend or sue to enforce their insurance contracts." *Lexow*, 602 So. 2d at 531. Moreover, such a result would be at odds with the Florida Supreme Court's assertion that, "[i]f the dispute is within the scope of section 627.428 and the insurer loses, the insurer is always obligated for attorney's fees." *Id.*

Because Southern-Owners admits that the Marquezes are members of the Association, DE 22 at 2 ¶ 12, the Court easily finds that there exist certain circumstances under which the Marquezes qualify as "additional insureds" under the Policy and therefore as "omnibus insureds" under Florida law, thereby bringing the dispute within the scope of section 627.428. *See Cont'l Cas. Co.*, 974 So. 2d 368 at 374 (defining an "omnibus insured" as "one who is covered by a provision in the policy but not specifically named or designated"). Further, because this Court's dismissal of the case without prejudice necessarily satisfies the judgment or decree requirement,[6] and because Florida courts have specifically found entitlement to section 627.428(1) attorneys' fees even on non-merits dismissal,[7] the Court finds that the Marquezes are entitled to attorneys'

---

[6] *See Atain Specialty Ins. Co.*, 564 F. Supp. 3d at 1270

[7] *Prime*, 270 F. App'x at 964; *Endurance Assurance Corp.*, 2020 WL 8258331, at *3–4; *Nat'l Union Fire*, 2011 WL 13214289, at *2; *Capitol Specialty Ins. Corp.*, 2019 WL 383868, at *1.

fees under section 627.428(1). This is especially the case considering that the court in *Endurance Assurance Corp.* awarded section 627.428 attorneys' fees after dismissal of the case utilizing the *Ameritas* factors—a situation which is entirely analogous and in fact almost identical to the instant case.

## B. Reasonable Attorneys' Fees Amount

Because the Court finds the Marquezes are entitled to attorneys' fees under section 627.428(1), the Court must next determine a reasonable attorneys' fees amount.

### 1. The Parties' Arguments

#### i) The Marquezes' Motion [DE 86]

The Marquezes request $31,152.50 in attorneys' fees, comprised of 143.9 total hours expended by four attorneys and five paralegals at Pike & Lustig, LLP. [DE 86 at 8–9]. The Marquezes contend that these 143.9 hours are "reasonable and related to the defense of the federal declaratory action pursued by Southern-Owners." *Id.* at 8. This is because, according to the Marquezes, "[t]he position taken by Southern-Owners required the expenditure of a substantial amount of time preparing answers and affirmative defenses, a counterclaim, motions, responses to motions, replies to motions, drafting and filing a third-party complaint, and conducting discovery." *Id.* Further, in support of the reasonableness of their requested fee amount, the Marquezes note that after conferring with Southern-Owners, certain time entries "have been redacted and are not incorporated within this Amended Motion." *Id.* at 8 n.1.

Next, the Marquezes argue that the hourly rates requested for the attorneys and paralegals at Pike & Lustig, LLP are reasonable. In doing so, the Marquezes rely upon the affidavits of Michael J. Pike, Esq., Daniel Lustig, Esq., Andrew J. Boloy, Esq., and Stuart Hartstone, Esq, which

generally demonstrate each attorney's experience and federal court litigation history.[8] *Id.* at 8–11. The Marquezes additionally cite several Southern District of Florida cases in which the court awarded attorneys' fees utilizing an hourly rate that was either similar or identical to the hourly rates requested by the Marquezes. *Id.* at 9–11.

Finally, the Marquezes argue that "[a] well-prepared fee petition also . . . include[s] a summary, grouping the time entries by the nature of the activity or stage of the case." *Id.* at 11 (quoting *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999)). Accordingly, the Marquezes have grouped numerous time entries by the stage of the litigation for the Court's convenience, drawing from the time logs provided at DE 86-1. *Id.* at 12–16.

ii) Southern-Owners' Response [DE 87]

In Southern-Owners' Response, Southern-Owners objects to the following hourly rates: (1) $415 for Michael J. Pike, Esq.; (2) $395 for Daniel Lustig, Esq.; (3) $200 for Andrew J. Boloy, Esq.; (4) $335 for Stuart Hartstone, Esq.; and (5) $160 each for paralegals Lisa McKee, Christine Domb, Valery Vega, Stacey Chapman, and Belinda Arnett. [DE 87 at 5]. Although Southern-Owners merely objects without explaining its reasoning, *see* DE 87 at 4, Southern-Owners has attached the affidavit of Jessica Gregory, Esq., demonstrating the hourly rates of Williams, Leininger, & Cosby, P.A.—Southern-Owners' retained law firm for this case. [DE 87-1]. Within the affidavit, Ms. Gregory lists the rates of the attorneys and support staff "who have worked on this file," with no hourly attorney rate therein exceeding $200, nor any paralegal rate exceeding $90. [DE 87-1]. Thus, Southern-Owners' argument presumably is that the Marquezes' rates are

---

[8] The affidavits are available at DE 86-2.

objectionable because they substantially exceed the rates charged by Southern-Owners' retained law firm.

Southern-Owners next objects to a multitude of time entries—specifically, to: (1) 1.25 hours spent researching a breach of contract action against the Association; (2) 0.2 hours attributable to discussions about bringing an indemnity count against the Association; (3) 0.2 hours spent discussing amending the state court action; (4) 1.5 hours spent "conducting legal research on seeking indemnification from the [Association] within the state court action and/or the federal court action"; (5) 16.45 total hours "pertaining to the drafting and filing of a Motion for leave to file Third Party Complaint, drafting/filing/serving of the Third Party Complaint, and the Motion to Dismiss the Third Party Complaint"; (6) 0.2 hours attributable to a phone conversation with the Marquezes' state court attorney about continued representation as counsel; (7) 0.2 hours attributable to a phone conversation with the Marquezes about participating "as personal counsel in the mediation for the underlying state court action"; (8) 0.2 hours spent conversing with Jenna Marquez about the status of the case and the filing of a motion for attorneys' fees; (9) 0.15 hours attributable to a phone call with Jenna Marquez discussing "the transfer of the state court dec action to the same Judge as the parallel personal injury case"; and (10) 0.1 hours spent "[r]eceiv[ing] and review[ing]" a motion to transfer. [DE 87 at 8–11]. Southern-Owners argues that these time entries are not related to the federal declaratory action and/or the specific claims or defenses at issue between Southern-Owners and the Marquezes. *Id.*

Further, beyond its objections to time entries as being unrelated to the federal declaratory action or as being part of claims unconnected to Southern-Owners, Southern-Owners also objects to several entries as being excessive or as containing duplicate billing. *Id.* at 11–12. In total, these

allegedly objectionable entries amount to 24.55 hours, and consist of Mr. Lustig's work in reviewing the answer, affirmative defenses, and counterclaim, and Mr. Boloy's work in: (1) researching the ambiguity of insurance policies; (2) drafting the answer and affirmative defenses; (3) researching adding a counterclaim; (4) analyzing and reviewing the Murphys' counterclaim and Southern-Owners' motion to dismiss; (5) drafting the counterclaim against Southern-Owners; and (6) reviewing and analyzing the state court action to revise the arguments made in federal court. *Id.* at 11–12. According to Southern-Owners, the "Answer and Affirmative Defenses" is "essentially 8 pages," the Counterclaim is "essentially 5 pages," and the Complaint in this case involved a single count related to an insurance coverage issue. *Id.* at 12. Southern-Owners therefore argues that it is "unreasonable to expect Southern-Owners to pay" the 24.55 hours attributable to drafting these documents. *Id.*

Southern-Owners also objects to certain entries as being "clerical work." *Id.* at 11, 13. Specifically, Southern-Owners objects to 0.4 total hours of time spent reviewing the calendar and docketing upcoming deadlines by paralegal Belinda Arnett. *Id.* at 13. And lastly, Southern-Owners objects to the 6.35 hours billed in connection with drafting and revising the amended motion for attorneys' fees (the instant Motion), which Southern-Owners maintains is "excessive for revising and filing an amended motion for fees which is essentially identical to the previously filed motion for fees, which time entries have already been included in prior billing entries." *Id.* at 13–14. Thus, overall, Southern-Owners objects to 51.75 hours of the Marquezes' 143.9 claimed hours—or, roughly 36% of the claimed hours.

iii) The Marquezes' Reply [DE 88]

In the Marquezes' Reply, the Marquezes argue that, because Southern-Owners has challenged only certain time entries related to defending against the declaratory action, Southern-Owners has therefore "conceded to the entitlement of fees for certain time entries." [DE 88 at 3]. However, of the time entries that Southern-Owners does challenge, the Marquezes argue "the time entries and fees for time expended shown in the . . . [Motion] are wholly related to the defense of Southern-Owners' declaratory action against the Marquezes." *Id.*

The Marquezes thereafter argue that—with respect to the reasonableness of the requested hourly rates—"[b]ased on the affidavits provided and the work product produced to this Court, it is evident that the Marquezes retained lawyers with the experience, skill and reputation to defend against Southern-Owners' declaratory action." *Id.* at 5. In support, the Marquezes note that United States District Judge Beth Bloom granted a $375 per hour rate for attorneys Michael J. Pike and Daniel Lustig *four years ago*, and that numerous decisions from the Southern District of Florida— including a decision from the Undersigned—have approved of a $200 rate for young associates in this district. *Id.* at 5–6.

As to Southern-Owners' arguments pertaining to the third-party complaint, the Marquezes argue that "the time expended by Pike & Lustig, LLP concerning the third-party complaint is wholly related to the defense of the declaratory action brought by Southern-Owners." *Id.* at 6. In connection therewith, the Marquezes argue that "[t]he Association is the policyholder and named insured under the Policy, yet, Southern-Owners chose not to make the Association a party to this action [and in fact] . . . contested the Marquezes [sic] Motion for Leave to [F]ile Third-Party Complaint against the Association[,] causing the Marquezes to incur additional fees." *Id.* at 6–7.

Next, with respect to the time entries concerning the revisions to the Motion, the Marquezes first argue that "[t]he conferral between the Marquezes' [sic] and Southern-Owners resulted in the Marquezes omitting certain time entries and fees based upon the argument of entitlement, not the amount that was charged for certain tasks." *Id.* at 7. With that being said, the Marquezes maintain that "the time entries and fees for the revisions to the Motion following conferral pursuant to Local[] Rule 7.3 are still recoverable, especially since entitlement has not been determined" and since "Southern-Owners caused the Marquezes and this Court to expend unnecessary time relitigating this issue due to Southern-Owners seeking to appeal this Court's Order and then abandoning that appeal." *Id.*

Finally, as to Southern-Owners' challenge to the time entries relating to researching and drafting the answer, affirmative defenses, and counterclaim, the Marquezes argue that, "[g]iven the unusual complexities in this action, specifically, the ambiguous terms within the Policy and the legal arguments put forward by the Marquezes, it would have been unjust for the Marquezes' attorneys to not have put in the time and effort required to properly defend against this action, specifically, the Marquezes [sic] Answer and Affirmative Defenses and Counterclaim, which essentially frames the Marquezes [sic] entire defense of this action." *Id.*

### 2. <u>Law Regarding Calculation of Attorneys' Fees</u>

A reasonable attorneys' fee award is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (*quoting Blum v. Stenson*, 465 U.S. 886, 888 (1994)). This "lodestar" may then be adjusted for the results obtained by the attorney. *See Barnes*, 168 F.3d at 427 (*citing Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)). "In determining what is a

'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 1350 n.2 (citation omitted).

The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (*quoting Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999)). The fee applicant bears the burden of establishing the claimed market rate. *See id.* at 427. The Court may use its own experience in assessing the reasonableness of attorneys' fees. *Norman*, 836 F.2d at 1299.

With regard to the type of evidence that the fee claimant should produce in support of a claim, in *Barnes*, the Eleventh Circuit has stated that

> [t]he "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303.  That burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity . . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." *Id*. (citations omitted).

168 F.3d at 427.

In submitting a request for attorneys' fees, fee applicants are required to exercise "billing judgment." *Id.* at 428 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983))*.* If fee applicants do not exclude "excessive, redundant, or otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," the court must exercise billing judgment for them. *See id.* (quoting *Norman*, 836 F.2d at 1301). The burden rests on the movant to submit a comprehensive request for fees so the court can determine how much time was reasonably expended. *Loranger*, 10 F.3d at 782. "But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

### 3. **The Instant Case**

### i)   Counsel's Hourly Rate

The Marquezes seek $415 per hour for Michael J. Pike, Esq., $395 per hour for Daniel Lustig, Esq., $200 per hour for Andrew J. Boloy, Esq., $335 per hour for Stuart Hartstone, Esq., and $160 per hour each for paralegals Christie Domb, Valery Vega, Stacey Chapman, Lisa McKee, and Belinda Barnett. [DE 86 at 8–9].

### a.   Mr. Pike & Mr. Lustig

Mr. Pike's standard hourly rate is $425, discounted to $415 in this case. [DE 86 at 9]. Mr. Pike avers that he has been licensed to practice law in Florida since 2002, has been a member in good standing before this Court since approximately 2003, and is the managing partner at Pike & Lustig, LLP. [DE 86-2 at 2]. Mr. Pike's practice is "largely dedicated to commercial litigation, a

24

portion of which includes insurance contract dispute matters." *Id.* Moreover, Mr. Pike has tried "numerous jury and bench trial cases in state and federal court." *Id.* In this regard, he has attached a list of roughly 109 cases litigated in federal court. *Id.* at 2, 5–11.

Mr. Lustig, in contrast, attests that he has been licensed to practice in Florida since 2008 and has been a member in good standing before this Court since 2009. [DE 86-2 at 13]. Similar to Mr. Pike, Mr. Lustig's practice is also "largely dedicated to commercial litigation, a portion of which involves insurance contract matters." *Id.* And, as also similar to Mr. Pike, Mr. Lustig has attached a list of cases litigated in federal court, comprised of approximately 91 cases. *Id.* at 16–21. In total, Mr. Pike seeks fees in connection with 5.9 hours expended on the instant case, while Mr. Lustig seeks fees in connection with 6.4 hours expended. [DE 86-2 at 3; DE 86-2 at 13].

Although there is no expert affidavit in support of Mr. Pike or Mr. Lustig's hourly rate, the Court first notes that the lack of an expert affidavit is not fatal. After all, "the court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (citations omitted).

Accordingly, based upon this information and the Court's own knowledge and experience, the Court concludes: (1) that a $415 hourly rate is a reasonable rate in this case for Mr. Pike, the managing partner of a commercial litigation firm who has almost 20 years of experience; and (2) that a $395 hourly rate is a reasonable rate for Mr. Lustig, an attorney with more than ten years of experience. *See Strategic Mktg., Inc. v. Great Blue Heron Software, LLC*, No. 15-cv-80032, 2017 WL 1284773, at *5–6 (S.D. Fla. Feb. 16, 2017), *report and recommendation adopted*, No. 15-cv-80032, 2017 WL 11680172, at *1 (S.D. Fla. Mar. 3, 2017) (finding an hourly rate of $375

reasonable for both Mr. Pike and Mr. Lustig in connection with an intellectual property case); *B/E Aerospace, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 16-81293-cv, 2017 WL 9288915, at * (S.D. Fla. Aug. 29, 2017) (finding a $472.50 hourly fee "somewhat higher than average" but reasonable for a partner in an insurance coverage case). In fact, the Undersigned has already determined rates higher than those requested by Mr. Pike and Mr. Lustig to be reasonable for attorneys of relatively similar experience in the South Florida market. *See Mt. Hawley Ins. Co. v. Roebuck*, No. 17-CV-80213, 2020 WL 5664949, at *3 (S.D. Fla. Sept. 2, 2020), *report and recommendation adopted*, No. 17-CV-80213, 2020 WL 5658719 (S.D. Fla. Sept. 23, 2020) (finding a rate of $430 for an attorney with 10 years of litigation/appeals experience reasonable in the South Florida market in a case concerning attorneys' fees under section 627.428); *Palm Partners, LLC v. Netnames A/S*, No. 17-CV-80577, 2018 WL 4208348, at *3 (S.D. Fla. July 20, 2018), *report and recommendation adopted*, No. 17-CV-80577, 2018 WL 4208339 (S.D. Fla. Aug. 30, 2018) (finding a $425 hourly rate reasonable for a partner practicing law in federal court for more than 10 years).

In making this determination, the Court specifically takes note of the limited number of hours expended by both Mr. Pike and Mr. Lustig in this case, and of Southern-Owners' failure to cite any supporting law when objecting to the hourly rates. Moreover, despite Southern-Owners' objection to the aforementioned hourly rates based entirely on the substantially lower rates charged by Southern-Owners' counsel, the Court finds that the rates charged by Southern-Owners' retained insurance defense firm are not comparable to the rates charged by the Marquezes' private counsel in the case at hand. *See Lender v. Geico Gen. Ins. Co.*, No. 09-22303-CIV, 2014 WL 12805694,

at *3 (S.D. Fla. Oct. 31, 2014) (stating that the rates charged by insurance defense counsel "are not necessarily comparable to rates charged by other private attorneys").

  b. Mr. Boloy

Mr. Boloy is "a member in good standing of the Florida Bar since September of 2019 and of this Court since March of 2020." [DE 86-2 at 23]. In his role as an associate attorney at Pike & Lustig, LLP, Mr. Boloy's practice involves commercial and personal injury matters in both state and federal court, including cases involving insurance contract disputes. *Id.* In total, Mr. Boloy avers that he has expended 121 hours on this case as the lead associate, requesting fees in connection therewith. *Id.* at 23–24.

While there is also no expert affidavit in support of Mr. Boloy's hourly rate, as just stated, the Court is "itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (citations omitted). Thus, drawing from the Court's own knowledge and experience, the Court concludes that a $200 hourly rate is a reasonable rate for a newly barred attorney in South Florida, and therefore, for Mr. Boloy in this case. *See Garcia v. United Recovery Sols., Inc.*, No. 17-CV-81199, 2018 WL 3701151, at *3–4 (S.D. Fla. July 16, 2018), *report and recommendation adopted*, No. 17-cv-81199, 2018 WL 4409981 (S.D. Fla. Aug. 1, 2018) (finding a $200 hourly rate reasonable for an attorney in South Florida with less than 3 years of experience); *Wales-Walden v. Ak "N" Eli, LLC*, No. 17-20658-CIV, 2018 WL 6812692, at *2 (S.D. Fla. Oct. 12, 2018), *report and recommendation adopted*, No. 17-cv-20658, 2018 WL 6807316 (S.D. Fla. Oct. 29, 2018) (finding $200 hourly rate reasonable for a second-year associate). Indeed, the Undersigned has already specifically found a $200 hourly

rate to be reasonable for an attorney with approximately one year of experience in South Florida. *See H.C. v. Bradshaw*, 426 F. Supp. 3d 1266, 1281 (S.D. Fla. 2019). To the extent Southern-Owners objects to Mr. Boloy's hourly rate solely on account of the affidavit of Ms. Gregory— who merely states the rates charged at her insurance defense firm [DE 87-1]—Southern-Owners' argument is not well-taken, for the reasons stated above.

      c.  <u>Mr. Hartstone</u>

Mr. Hartstone attests that he is a "member in good standing of the Florida Bar since February of 2011 and of this Court since October of 2021." [DE 86-2 at 28]. Mr. Hartstone joined Pike & Lustig, LLP in July of 2021, after working six years as a Senior Supervising Trial Court Law Clerk at the Fifteenth Judicial Circuit in and for Palm Beach County. [DE 86 at 10]. "Prior to joining the Fifteenth Circuit, [Mr. Hartstone] . . . focused his practice in criminal defense, serving as the Acting Executive Director of the Florida Capital Resource Center, a nonprofit organization dedicated to the defense and mitigation of death penalty cases." *Id.* In total, Mr. Hartstone seeks fees in connection with 1.6 hours expended on this case. [DE 86-2 at 28].

While there is also no expert affidavit in support of Mr. Hartstone's hourly rate, to reiterate once more, the Court is "itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (citations omitted). Thus, again, drawing from the Court's own knowledge and experience, the Court concludes that a $335 hourly rate is a reasonable rate in this case for Mr. Hartstone, an attorney with roughly ten years of experience. *Mt. Hawley Ins. Co. v. Roebuck*, 2020 WL 5664949, at *3 (finding a rate of $430 for an attorney with 10 years of litigation/appeals experience reasonable in the South Florida

market in a case concerning attorneys' fees under section 627.428); *St. Louis Condo. Ass'n v. Rockhill Ins. Co.*, No. 18-21365-Civ, 2019 WL 7905013, at *4 (S.D. Fla. Oct. 10, 2019), *report and recommendation adopted in part*, No. 18-21365-CIV, 2020 WL 13049355 (S.D. Fla. Mar. 13, 2020) (finding $325 for a seventh-year attorney to be reasonable in an insurance case); *Palm Partners*, 2018 WL 4208348, at *3 (finding a $425 hourly rate reasonable for a partner practicing law in federal court for more than 10 years). In making this finding, the Court has considered the limited number of hours expended by Mr. Hartstone and Southern-Owners' lack of citation to *any* case law supporting its objections to the hourly rate of Mr. Hartstone.

      d.   <u>Ms. Domb, Ms. Vega, Ms. Chapman, Ms. McKee, and Ms. Barnett</u>

Lastly, the Marquezes request $160 for each of five separate paralegals— Ms. Domb, Ms. Vega, Ms. Chapman, Ms. McKee, and Ms. Barnett. There is no affidavit or assertion as to the experience of these five paralegals. Nonetheless, the Court, drawing from its own independent knowledge and experience, finds that a reduction in the paralegals' hourly rate from $160 to $125 is appropriate and that a $125 hourly rate is reasonable for a paralegal in South Florida under these circumstances. *See Barberi v. TCB Sport Ent.* LLC, No. 21-CV-60726, 2022 WL 625239, at *4 (S.D. Fla. Feb. 16, 2022), *report and recommendation adopted*, No. 21-60726-CIV, 2022 WL 624998 (S.D. Fla. Mar. 3, 2022) (noting that courts have consistently reduced paralegals' hourly rates when provided little to no information on their experience or qualifications and therefore finding a reduction in the paralegals' hourly rate to $100 to be appropriate); *Purcella v. Mercantile Adjustment Bureau, LLC*, No. 18-CV-61268, 2019 WL 6462550, at *4 (S.D. Fla. Nov. 13, 2019), *report and recommendation adopted*, No. 18-cv-61268, 2019 WL 6608900 (S.D. Fla. Dec. 5, 2019) (reducing paralegal's hourly rate from $150 to $125 after the plaintiff provided "little

professional background"). The Court notes the limited time expended by the five paralegals (9 hours) in comparison to the total amount requested (143.9 hours) in making this finding, as well as Southern-Owners' failure to cite any supporting law in connection with its objections to the rates of these five paralegals.

    ii)  <u>Number of Hours Reasonably Expended</u>

    In order to determine the reasonable number of hours expended by the Marquezes' counsel, the Court has carefully reviewed the Motion, the Response, the Reply, the attachments thereto (including the detailed time logs attached as DE 86-1), and Southern-Owners' objections. The Court will address Southern-Owners' objections—specifically, the objections to: (1) the 20.45 hours of "time entries . . . unrelated to the defense of the Declaratory Judgment Action and/or Order of dismissal"; (2) the 24.55 hours of "time entries as being excessive [or] containing duplicate billing"; (3) the 0.4 hours of time entries related to non-compensable clerical work; and (4) the 6.35 hours of time entries spent revising the instant Motion.

    But before doing so, the Court finds that, to the extent Southern-Owners has failed to object to the majority of time entries, Southern-Owners has waived any argument as to the reasonableness of those time entries. *See Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, No. 18-CV-60912, 2021 WL 2269822, at *9 (S.D. Fla. Apr. 30, 2021), *report and recommendation adopted*, No. 18-cv-60912, 2021 WL 2024424 (S.D. Fla. May 21, 2021) (finding that failure to object to the reasonableness of the amount requested resulted in waiver of objection as to the reasonableness of the claimed fees). Nonetheless, despite this waiver, the Court has taken the total billing records into consideration for purposes of determining a proper fee amount.

a.  <u>Unrelated Time Entries</u>

In reviewing the Marquezes' request for the 20.45 hours for which Southern-Owners objects, it does appear that a small portion of the time requested is "unnecessary" and that the Marquezes have not exercised proper billing judgment to a limited extent. *See Barnes*, 168 F.3d at 428. Specifically, the Marquezes' attorneys improperly billed for certain entries pertaining to the state court action. *Evanston Ins. Co. v. Lauris Boulanger, Inc.*, No. 09-21172-CIV, 2010 WL 556522, at *2 (S.D. Fla. Feb. 11, 2010) ("To the extent that the counterclaim seeks attorneys [sic] fees for the underlying state-court action, this claim is filed in the wrong court."). Section 627.428(3) provides that "[w]hen so awarded, compensation or fees of the attorney shall be included in the judgment or decree *rendered in the case*." § 627.428(3), Fla. Stat. (emphasis added). Thus, as noted by the court in *Evanston Insurance Co.*, "[t]his statutory language indicates that the court rendering the judgment [or its functional equivalent] is the proper court to award attorneys [sic] fees under the statute." *Evanston Ins. Co.*, 2010 WL 556522, at *2. Here, therefore, the Marquezes' request for costs related to the state court action is improper.

However, to the extent Southern-Owners takes issue with the third-party complaint and related filings, the Court does find that the hours related to the third-party complaint are not "excessive, redundant, or otherwise unnecessary." *See Barnes*, 168 F.3d at 428. Despite the Association being the named insured under the Policy, Southern-Owners chose not to involve the Association and opposed the Marquezes' Third-Party Complaint, *see* DE 42, which only became necessary in the first instance because Southern-Owners improperly filed a parallel action.

b.  Excessive or Duplicative Billing

Next, the Court considers the 24.55 hours of entries that Southern-Owners maintains are excessive or contain duplicate billing. As to these hours, several tasks seem to have taken longer than what can be considered reasonable. For example, Mr. Boloy spent 14.75 hours drafting the answer, affirmative defenses, and counterclaim over the course of October 10, 2020, October 12, 2020 and October 13, 2020. [DE 86-1 at 2]. He then spent 1.75 hours revising such on October 14, 2020. [DE 86-1 at 2–3]. And, after submitting the drafts to Mr. Lustig for review, Mr. Boloy spent another 6.1 hours revising the very same answer, affirmative defenses, and counterclaim. *Id.* at 3. The Court finds this amount of time excessive and therefore finds that it should be partially reduced. *See Bivins*, 548 F.3d at 1350 (providing for a reduction in the number of hours or an across-the-board cut in calculating a fee award if a court finds the hours billed to be excessive or unnecessary).

c.  Clerical Work

Southern-Owners takes issue with 0.4 total hours of allegedly objectionable non-compensable clerical work. Time entries for clerical or administrative tasks should be excluded. *See Thompson v. Branch Banking & Tr. Co.*, No. 19-CV-60108, 2020 WL 7061558, at *3 (S.D. Fla. Nov. 10, 2020), *report and recommendation adopted*, No. 19-CV-60108, 2020 WL 7059353 (S.D. Fla. Dec. 2, 2020), *appeal dismissed*, No. 21-10010-J, 2021 WL 1327212 (11th Cir. Feb. 5, 2021); *Ortega v. Berryhill*, No. 16-24697-CIV, 2017 WL 6026701, at *2 (S.D. Fla. Dec. 5, 2017) ("Purely clerical or secretarial tasks that require no legal skill or training, such as converting pleadings to PDF, faxing and mailing, updating lists and calendars, and filing or e-filing

documents, should not be billed at a paralegal rate regardless of who performs them." (citing *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999)).

Here, paralegal Belinda Arnett billed .4 hours performing clerical or secretarial tasks such as reviewing and updating calendars or reviewing the docket. *See Ortega*, 2017 WL 6026701, at *2. The Court finds that this time is non-compensable and therefore takes these 0.4 non-compensable hours into consideration when determining the lodestar amount. *See Bivins*, 548 F.3d at 1350.

        d.   <u>Excessive or Duplicative Billing (As to the Motion)</u>

Lastly, the Court considers the 6.35 hours spent revising the original motion for attorneys' fees and costs. After comparing the Marquezes' Verified Motion for Entitlement and Award of Attorneys' Fees and Costs [DE 73] with the instant Motion [DE 86], it does appear that at least some of these 6.35 hours are excessive. The two motions are substantially similar, with the main difference being the extra background added to address the qualifications of Mr. Hartstone (which merely constitutes two added paragraphs). Consequently, the Court finds it would be unreasonable to bill the full 6.35 hours spent revising the Motion. *See Barnes*, 168 F.3d at 428.

### 4.  <u>Calculation of Lodestar Amount</u>

The Court has carefully considered the deficiencies in the Marquezes' counsel's billing records, which include a relatively small amount of objectionable time entries that: (1) are connected to the Underlying Lawsuit; (2) bill excessively for certain tasks; and (3) are related to clerical tasks. The Court therefore finds it appropriate to reduce the time billed. "When a district court finds the number of hours claimed is unreasonably high, the court has two choices; it may

conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350 (citing *Loranger*, 10 F.3d at 783).

Here, the Undersigned finds that an across-the-board reduction in hours is appropriate to account for these billing deficiencies. The Court will reduce the hours claimed by 5%, which results in an award of 5.61 hours for Mr. Pike, 6.08 hours for Mr. Lustig, 114.95 hours for Mr. Boloy, 1.52 hours for Mr. Hartstone, 4.85 hours for Christie Domb, 1.05 hours for Valery Vega, 1.43 hours for Stacey Chapman, 0.86 hours for Lisa McKee, and 0.38 hours for Belinda Barnett. Therefore, the Marquezes are entitled to an attorneys' fees award against Southern-Owners in the amount of $29,300.20 ($2,328.15 for Mr. Pike's billed hours, $2,401.60 for Mr. Lustig's hours, $22,990.00 for Mr. Boloy's hours, $509.20 for Mr. Hartstone's hours, and $1,071.25 for the collective hours of Ms. Domb, Ms. Vega, Ms. Chapman, Ms. McKee, and Ms. Barnett).

## C. **Costs**

### 1. **The Parties' Arguments**

#### i) The Marquezes' Motion [DE 86]

In the last section of their Motion—titled "Recovery of Non-Taxable Costs"—the Marquezes simply argue that, "[c]onsistent with Fla. Stat. § 57.041, [they] are entitled to recover $119.94 against Southern-Owners," comprised of service of process fees and postage fees. [DE 86 at 16–17]. The Marquezes have attached an Invoice [DE 86-3 at 1] from C.W. Services & Associates, Inc., and a United States Postal Service Certified Mail Receipt [DE 86-3 at 2] in support.

ii)  Southern-Owners' Response [DE 87]

Southern-Owners begins by arguing that section 627.428, Florida Statutes, "does not contain any mention of the right to an award of costs." [DE 87 at 14]. Southern-Owners therefore argues that, because the Marquezes have the burden of demonstrating entitlement to costs and "have offered no argument or authority to suggest that non-taxable costs are awardable pursuant to section 627.428(1)," this Court should deny the Marquezes request for non-taxable costs "to the extent they are requesting such costs under § 627.428(1)." [DE 87 at 14–15].

Southern-Owners also argues that the Marquezes are not entitled to costs under section 57.041, Florida Statutes, or to costs as the prevailing party. *Id.* at 15. With respect to the former, according to Southern-Owners, "the Marquezes have not obtained a 'judgment' or its functional equivalent within the meaning of section 57.041." *Id.* As to the latter, Southern-Owners argues that the Marquezes are not the "prevailing party" because "[a]n Order dismissing the case without prejudice [due to] the district court . . .  declining to exercise jurisdiction resolves only a procedural issue, not any substantive issue in the case." *Id.* at 16. And lastly, Southern-Owners notes the general rule that a prevailing party may only recover taxable costs, noting that the Marquezes request "non-taxable" costs without providing any authority. *Id.*

iii)  The Marquezes' Reply [DE 88]

The Marquezes do not respond to any of Southern-Owners' cost arguments in their Reply, which is perhaps telling. Instead, they focus entirely on attorneys' fees.

**2.  Law and Application**

Despite the Marquezes' request for non-taxable costs under section 57.041, Florida Statutes, "[i]n diversity cases, federal law controls the award of costs." *Jin Zhi Star Lt. LLC v. Am.*

*Zurich Ins. Co.*, No. 08-61191-CIV, 2009 WL 2899913, at *8 (S.D. Fla. Sept. 2009); *Grasso v. Grasso*, No. 13-cv-3186, 2016 WL 8716273 (M.D. Fla. Oct. 21, 2016), *report and recommendation adopted*, No. 13-cv-3186, 2016 WL 7240051 (M.D. Fla. Dec. 15, 2016) ("In diversity cases, a district court must apply federal law to determine whether a [party] is entitled to costs."). "The only exception by which state law provides the rules for determining costs is where the applicable state law expands the costs allowed under § 1920." *Jablonski v. St. Paul Fire & Marine Ins. Co.*, No. 07-cv-00386, 2010 WL 1417063, at *10 (M.D. Fla. Apr. 7, 2019). "But, in order to do so, the substantive law to be applied must 'explicitly' authorize the allowance of additional costs." *Id.* (alteration omitted) (citing *Parkes v. Hall*, 906 F.2d 658, 660 (11th Cir. 1990)). In this regard, "federal courts may award costs other than those enumerated in § 1920 pursuant to contractual or statutory authorization." *Piper Aircraft, Inc. v. Czech Sport Aircraft, A.S.*, No. 12-14107-CIV, 2020 WL 7774743, at *1 n.1 (S.D. Fla. Dec. 10, 2020), *report and recommendation adopted*, No. 12-14107-CIV, 2020 WL 7770896 (S.D. Fla. Dec. 30, 2020).

Federal Rule of Civil Procedure 54 states in part, "[u]nless a federal statute, these rules, or a court provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). A "prevailing party" is the party in whose favor judgment is rendered by the Court. *See Util. Automation 2000, Inc. v. Choctawhatchee Elec. Coop., Inc.*, 298 F.3d 1238, 1248 (11th Cir. 2002). "To be a prevailing party, one need only obtain some relief on the merits of his claim." *Pierre-Louis v. Baggage Airline Guest Servs., Inc.*, No. 0:19-CV-61306-RAR, 2021 WL 633217, at *2 (S.D. Fla. Jan. 26, 2021), *report and recommendation adopted,* No. 19-CV-61306-RAR, 2021 WL 617003 (S.D. Fla. Feb. 16, 2021) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603–05 (2001) (a prevailing

party needs a judgment or consent decree to prove that there has been an "alteration in the legal relationship of the parties")).

However, under federal law, "the law is well settled that a dismissal without prejudice does not alter the legal relationship between the parties." *Stream, Inc. v. Cary Tobacco I, Inc.*, No. 16-23963-Civ, 2017 WL 6408981, at *3 (S.D. Fla. Aug. 2, 2017), *report and recommendation adopted*, No. 16-cv-23963, 2017 WL 6408996 (S.D. Fla. Aug. 17, 2017). Thus, because section 627.428(1) allows for attorneys' fees even when there is a dismissal without prejudice, [9] circumstances exist where a party may be entitled to attorneys' fees under section 627.428(1), Florida Statutes, but not to costs under federal law as the prevailing party. *See Encompass Floridian Ins. Co. v. Dunn*, No. 18-cv-228, 2019 WL 2331649, at *1–2 (M.D. Fla. May 9, 2019), *report and recommendation adopted*, No. 18-cv-228, 2019 WL 2330459 (M.D. Fla. May 31, 2019).

Here, the Court declined jurisdiction based on the *Ameritas* factors. While the Marquezes are therefore entitled to attorneys' fees under section 627.428(1) due to the Court's accompanying dismissal without prejudice—which was against Southern-Owners and in favor of the Marquezes—the Marquezes are not the prevailing party under federal law. This is because the Court necessarily declined to reach the merits of the case and "because a dismissal without prejudice places no 'judicial *imprimatur*' on the 'legal relationship of the parties,' which is the 'touchstone of the prevailing party inquiry.'" *United States v. $70,670.00 in U.S. Currency*, 929 F.3d 1293, 1303 (11th Cir. 2019) (quoting *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419,

---

[9] *Prime*, 270 F. App'x at 964; *Endurance Assurance Corp.*, 2020 WL 8258331, at *3–4; *Nat'l Union Fire*, 2011 WL 13214289, at *2; *Capitol Specialty Ins. Corp.*, 2019 WL 383868, at *1.

420(2016)). Accordingly, the Court finds that the Marquezes are not entitled to costs under federal law.

Nonetheless, even though the Marquezes "seek costs pursuant to section 57.041 of the Florida Statutes rather than Federal Rule of Civil Procedure 54(d)(1) but entirely fail to support their assertion that Florida's costs statute governs," *Chen v. Walsh*, No. 18-23894-CV, 2021 WL 3403942, at *5 (S.D. Fla. Mar. 8, 2021), the Court will consider the Marquezes' entitlement to costs under section 57.041. Section 57.041 provides that "[t]he party recovering judgment shall recover all his or her legal costs and charges which shall be included in the judgment." § 57.041(1), Fla. Stat. "The costs that are permitted under Fla. Stat. § 57.041 are different from the costs that are permitted under 28 U.S.C. § 1920." *Maiden Specialty Ins. Co. v. Three Chefs & a Chicken, Inc.*, No. 12-22724-CIV, 2014 WL 11429052, at *11 (S.D. Fla. Jan. 28, 2014), *report and recommendation adopted sub nom. Maiden Specialty Ins. Co. v. Chefs*, No. 12-22724-CIV, 2014 WL 11429053 (S.D. Fla. Mar. 13, 2014). "Under Fla. Stat. § 57.041, the party recovering judgment is entitled to recover all legal costs and charges . . . [which] are not limited to those costs listed in 28 U.S.C. § 1920." *Id.*

Thus, pursuant to this body of law, the Court may seemingly examine the Marquezes' request for costs under section 57.041 and state law. *See Jablonski*, 2010 WL 1417063, at *10. However, even in doing so, the plain language of section 57.041 provides that there must be a "party recovering judgment" in order for there to be an award of costs. See § 57.041(1), Fla. Stat. As it relates to this language, *Magdalena v. Toyota Motor Corp.*, 253 So. 3d 24 (Fla. 3d DCA 2017) is instructive. In that case, Florida's Third District Court of Appeal examined section 57.041 in detail. *Id.* at 26–27. To that end, after noting that "section 57.041 is clear and unambiguous,"

38

the court held "that a dismissal on the ground of forum non conveniens is not a judgment or ruling on the merits. . . but rather a ruling which merely provides that another forum is more convenient and would best serve the ends of justice." *Id.* at 25–26. Consequently, to the extent that the trial court had awarded costs under section 57.041 to Toyota as the prevailing party upon dismissal of the case on *forum non conveniens* grounds instead of upon recovery of judgment, the Court found reversible error. *Id.* at 28; *see also Sherman v. Sherman*, 279 So. 3d 188, 193 (Fla. 4th DCA 2019) (noting the distinction between the "prevailing party" standard and the "party recovering judgment," clarifying that costs under section 57.041(1) require a "party recovering judgment").

Here, while the instant case did not involve dismissal on *forum non conveniens* grounds, the Court did decline jurisdiction for prudential reasons based on the *Ameritas* factors, which is strikingly similar to dismissal on *forum non conveniens* grounds. Thus, the Court finds that the Dismissal Order—in which the Court declined jurisdiction so that the parties could litigate the issue in the Underlying Lawsuit—is not the functional equivalent of a judgment for purposes of an award of costs under section 57.041. Accordingly, even assuming section 57.041 applies here, the Court finds that the Marquezes are not entitled to costs—taxable or non-taxable—under that statute.[10] And, while the law is also somewhat unclear as it relates to costs under section 627.428, the Court need not reach the issue or the intricacies of the costs aspect of section 627.428, as the Marquezes neither requested costs under section 627.428, nor responded to Southern-Owners' arguments concerning costs in the Reply. In Short, the Marquezes' request for costs is denied.

---

[10]  While this determination may seem somewhat contradictory to the Court's earlier finding as to section 627.428(1), that section allows for attorneys' fees recovery "[u]pon the rendition of a judgment *or decree*." § 627.428, Fla. Stat. (emphasis added).

### III.   <u>CONCLUSION</u>

In light of the foregoing, it is hereby **ORDERED** as follows:

1.   The Marquezes' Amended Verified Motion for Entitlement and Award of Attorneys' Fees and Costs [DE 86] is **GRANTED IN PART** and **DENIED IN PART**.

2.   The Marquezes are entitled to attorneys' fees in the amount of $29,300.20. This amount reflects a 5% reduction in the Marquezes' requested attorneys' fees amount, and a reduction in the paralegals' hourly rate from $160 to $125. The Court will enter a separate judgment for this amount.

3.   The Marquezes' request for an award of costs is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 8th day of July, 2022.

WILLIAM MATTHEWMAN
United States Magistrate Judge